**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SHARDA CROPCHEM LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner for U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Court No. 26-00533 |

**COMPLAINT**

On behalf of Sharda Cropchem Limited, an U.S. importer of merchandise subject to the challenged duties, by and through the undersigned attorneys, hereby brings this civil action and alleges the following:

1.  This action challenges the imposition of certain *ad valorem* tariffs on goods from nearly every foreign country. Starting in February 2025, President Trump issued a series of Executive Orders imposing tariffs and claiming authority pursuant to the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.)(IEEPA), the National Emergencies Act (50 U.S.C. 1601 et seq.)(NEA), section 604 of the Trade Act of 1974, as amended (19 U.S.C. 2483), and section 301 of title 3, United States Code.

2.  This Court and the Federal Circuit have held that IEEPA does not authorize these tariffs. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted,* No. 25-

1

250, 2025 U.S. LEXIS 2782, 2025 WL 2601020 (U.S. Sept. 9, 2025). This case is currently before the Supreme Court and its ruling is expected in the near future.

3. Same as the plaintiffs in *V.O.S. Selections*, Plaintiff here is a U.S.-based importer. Plaintiff made entries for which IEEPA tariffs were paid. The tariffs were assessed as standalone "line items" on each Customs Form 7501 ("CF 7501") Plaintiff was required to complete per entry. Through this action, Plaintiff requests that the Court follow what it and the Federal Circuit held in *V.O.S. Selections*: that the IEEPA duties imposed by Defendant, and the underlying executive orders that directed them, are unlawful.

## Parties

4. Plaintiff is a U.S. importer of various products subject to the IEEPA tariffs.

5. Defendant U.S. Customs and Border Protection (Customs) is a federal agency headquartered in Washington, D.C.

6. Defendant Rodney S. Scott is the Commissioner for Customs and is sued in his official capacity.

7. Defendant United States is a sovereign entity and the Government of the United States.

## Standing

8. Plaintiff has paid customs duties as a result of tariffs illegally imposed under IEEPA and has suffered injury caused by the underlying executive orders. Without the Court's judgement, Plaintiff will continue to suffer economic injuries as a result of the IEEPA tariffs.

2

**Jurisdiction**

9. The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).[1]

10. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

**Timeliness**

11. An action under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues. 28 U.S.C. § 2636(i).

12. Plaintiff contests action taken by Defendants that resulted in Plaintiff paying IEEPA tariffs on entries it has made. The claims asserted by the Plaintiff accrued at the earliest on February 4, 2025, the effective date of the President's Executive Order 14195, imposing the

---

[1] Plaintiff acknowledges that one decision from the United States District Court for the District of Columbia has held otherwise. *Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment,* No. 24-1287, 2025 U.S. LEXIS 2783, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit. Before the D.C. Circuit held argument, the Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources* and consolidated these two cases. Plaintiff believes that the Court of International Trade has exclusive jurisdiction to hear its claims.

initial 10% *ad valorem* IEEPA tariff on goods from China.  *See* Executive Order 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025).

13. Therefore, the instant action was filed within two years of the date that Plaintiff paid any IEEPA tariffs and the claims started to accrue.

**Statement of Facts**

14.  On February 4, 2025, President Trump declared national emergency of the trafficking of opioids into the United States and the failure of Mexico, Canada, and China to meaningfully address this threat.  President Trump then imposed a 25 percent *ad valorem* duties on all articles from Mexico and Canada, and a 10 percent *ad valorem* duties on all articles from China.  *See* Executive Order 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 1, 2025) (EO 14193); Executive Order 14194*, Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 1, 2025) (EO 14194); Executive Order 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121 (Feb. 1, 2025) (EO 14195). These IEEPA tariffs are collectively referred to as the Trafficking Tariffs.

15. Following negotiations with the three countries subject to the trafficking tariffs and each of these countries' responsive actions taken thereinafter, President Trump has issued a series of Executive Orders modifying the tariffs.  *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1362-63 (Ct. Int'l Trade 2025) (summarizing the subsequent Executive Orders).

16. On April 2, 2025, President Trump declared national emergency over the "[l]arge and

persistent annual U.S. goods trade deficits" with all of its trading partners, resulting in "a lack of reciprocity in our bilateral trade relationships, disparate tariff rates and non-tariff barriers, and U.S. trading partners' economic policies that suppress domestic wages and consumption." Executive Order 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) (EO 14257). The President therefore imposed a 10 percent *ad valorem* baseline duty on all foreign countries effective on April 5, 2025, and set a timeline for tariffs for certain countries to be increased by certain percentages at a later date.  Such IEEPA tariff is referred to as the Reciprocal Tariff.

17. Following negotiations with various countries subject to the Reciprocal Tariff and their responsive actions taken thereinafter, President Trump issued a series of Executive Orders modifying the Reciprocal Tariffs.  *See V.O.S. Selections*, 772 F. Supp. 3d 1350, 1363-64 (summarizing the subsequent Executive Orders).

18. On August 5, 2025, President Trump imposed additional tariffs on virtually all Indian imports based on the national emergency declared in Executive Order 14066 of March 8, 2022. *See* Executive Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 6, 2025) (EO 14329); Executive Order 14066, *Prohibiting Certain Imports and New Investments With Respect to Continued Russian Federation Efforts To Undermine the Sovereignty and Territorial Integrity of Ukraine*, 87 Fed. Reg. 13,625 (Mar. 8, 2022) (EO 14066).  In EO 14066, President Biden, relying on IEEPA to address Russia's aggression towards Ukraine and its violation of international law, prohibited the importation of certain natural resource from the Russian Federation origin into the U.S., new investment in the energy sector in the Russian Federation by a U.S. person, and any approval

5

financing, facilitation, or guarantee by a U.S. person, of a transaction by a foreign person where the transaction by that foreign person would be prohibited by this section if performed by a U.S. person or within the U.S.  EO 14066, however, did not impose any tariffs on products of Russian origin.

19. In EO 14329 of August 5, 2025, President Trump declared that the national emergency described in EO 14066 continues, and that the action and policies of Russian Government continue to pose an unusual and extraordinary threat to the national security and foreign policy of the United States. President Trump stated further that it is necessary and appropriate to impose an additional 25 percent *ad valorem* duties on imports of all imports from India because "[India] is directly or indirectly importing Russian Federation oil."  *See* EO 14329.  This 25% IEEPA tariff is referred to as the India-Secondary Russia Tariff.

20. In implementing these three groups of Executive Orders imposing the Trafficking Tariffs, Reciprocal Tariffs, India-Secondary Russia Tariffs, respectively, (collectively referred to as IEEPA Tariffs), the President directed changes to the Harmonized Tariff Scheduled of the United States, requiring that goods subject to the challenged tariffs to be entered with new import codes under Chapter 99 of the Harmonized Tariff Schedule of the United States, titled "Temporary legislations; temporary modifications proclaimed pursuant to trade agreements legislation; additional import restrictions proclaimed pursuant to section 22 of the Agricultural Adjustment Act, as amended".  As a result, Plaintiff has had to modify its entry summary filings with the additional HTSUS subheadings and pay the associated additional IEEPA tariffs on the CF 7501 line items dedicated to those tariffs at entry.

21. As of this filing, the Trafficking Tariffs, Reciprocal Tariffs, and India-Secondary Russia Tariff, all remain in place.

6

22.  In each of the IEEPA-related EOs described above, the President claimed that his action is lawfully authorized by the U.S. Constitution and the International Emergency Economic Powers Act (50 U.S.C. 1701 et seq.)(IEEPA), the National Emergencies Act (50 U.S.C. 1601 et seq.)(NEA), section 604 of the Trade Act of 1974, as amended (19 U.S.C. 2483), and section 301 of title 3, United States Code.  *See e.g.*, EO 14193.

23.  Article I of the Constitution provides that "[a]ll legislative powers herein granted" are "vested in" Congress, not the President.  U.S. Const. art. I, § 1. It further provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises" and to "regulate Commerce with Foreign Nations[.]" U.S. Const. art. I, § 8, cls. 1, 3.

24.  IEEPA grants the President authorities to take certain actions in response to a declared national emergency arising from an "unusual and extraordinary threat []… to the national security, foreign policy, or economy of the United States." 50 U.S.C. § 1701(a).  When such an emergency exists, IEEPA authorizes the President to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States." 50 U.S.C. § 1702(a)(1)(B).

25. The text of IEEPA does not use the term "tariff" or any word of similar meaning. Although the statute was enacted in 1977 and has been amended multiple times since, it has never been amended to authorize the imposition of tariffs, nor has it been used by any prior President to impose tariffs.

26. The NEA, codified as amended at 50 U.S.C. §§ 1601–51, sets forth a process for presidential declarations of national emergency and congressional review and termination of the same.  50 U.S.C. §§ 1621–22.

27. Section 604 of the Trade Act of 1974, codified as amended at 19 U.S.C. § 2483, directs the President to update the HTSUS to reflect the import duties, "as appropriate".  19 U.S.C. § 2483.  Congress has declared that the HTSUS, including "[e]ach modification or change made . . . by the President under authority of law (including section 604 of the Trade Act of 1974)," "shall be considered to be statutory provisions of law for all purposes." 19 U.S.C. § 3004(c)(1).

28. Section 301 of title 3, United States Code, authorizes the President to delegate powers within the Executive Branch. 3 U.S.C. § 301.

29. The NEA, Section 604 of the Trade Act of 1974, and Section 301 of title 3, United States Code, grant the President certain procedural authorities.  These statutes do not grant the President any substantive authority to impose the IEEPA Tariffs.

30. On May 28, 2025, a three-judge panel of this Court granted summary judgement to the plaintiffs in *V.O.S. Selections* and issued a permanent and universal injunction enjoining the Government from enforcing the IEEPA Trafficking and Reciprocal Tariffs.  *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). An *en banc* panel of the Federal Circuit upheld this Court's determination that the President exceeded his authority under IEEPA in imposing both the Trafficking and Reciprocal tariffs, though it remanded the universal injunction for this Court to re-determine the scope of injunctive relief in light of *Trump. v. CASA, Inc.,* 145 S. Sc. 2540, 222 L. Ed. 2d 930 (2025).  *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted,* No. 25-250, 2025 U.S. LEXIS 2782, 2025 WL 2601020 (U.S. Sept. 9, 2025).

8

31. The IEEPA India-Secondary Russia Tariff was not before the courts in *V.O.S. Selections*, because the relevant Executive Orders, EO 14329, was issued after this Court has issued decision in *V.O.S.* Nonetheless, this Court's and the Federal Circuit's holding in *V.O.S.* apply equally to the India-Secondary Russia Tariff. In EO 14329, President Trump invoked exactly the same set of "authorities" as it did in imposing the Trafficking Tariffs and Reciprocal Tariffs. Further, the tariff measures applied in EO 14329 are no different in nature to the other two groups of IEEPA tariffs – imposing double-digit *ad valorem* duty rate across the board to almost all imports from a country.

## COUNT I

### IEEPA Tariffs Are Imposed in Excess of Statutory Authority

32. The allegations of paragraphs 1 through 31 are restated and incorporated herein by reference.

33. A presidential action may be set aside if the President's action involves "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985).

34. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

35. For imports, IEEPA only authorizes the President to "by means of instructions, licenses, or otherwise . . . investigate, regulate, or prohibit . . . any transactions in foreign exchange" and to "regulate . . . any . . . importation [] of any property in which any foreign country or a national thereof has any interest by any person." 50 U.S.C. § 1702(a)(1)(A), (B).

36. Neither the plain language of IEEPA nor the legislative history supports the proposition that the President has authority to impose tariffs.

37. This Court and the Federal Circuit have found that the President exceeded its authority under IEEPA to impose the Trafficking and Reciprocal tariffs, which are unbounded in scope, amount, and duration, and applied so broadly to nearly all articles from nearly all countries that are imported into the United States.

38. Plaintiff challenges the same Trafficking and Reciprocal Tariffs that were struck down in *V.O.S. Selections*, and for the same reason set forth in *V.O.S. Selections*. Plaintiff challenges an additional IEEPA Tariff, the India-Secondary Russia Tariff, that is legally and structurally no different from the Trafficking and Reciprocal tariffs. Plaintiff requests this Court apply its precedent and the binding decision of the Federal Circuit and declare Defendant's actions giving rise to IEEPA tariffs *ultra vires*, order refund of all IEEPA duties collected from Plaintiff with interest, and enjoin Defendants from enforcing them with respect to Plaintiff.

## COUNT II

## ALTERNATIVE – IEEPA IS AN UNCONSTITUTIONAL DELEGATION OF CONGRESSIONAL POWER

39. The allegations of paragraphs 1 through 38 are restated and incorporated herein by reference.

40. If IEEPA is construed to authorize the President to impose or modify tariffs, the Court should nonetheless find the IEEPA tariffs and aforementioned IEEPA-related EOs unlawful because in that event IEEPA would constitute an impermissible delegation of legislative power from Congress to the President.

10

41. Article I of the Constitution provides that "[a]ll legislative powers herein granted" are "vested in" Congress, not the President.  U.S. Const. art. I, § 1. It further provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises" and to "regulate Commerce with Foreign Nations[.]" U.S. Const. art. I, § 8, cls. 1, 3.

42.  When Congress delegates its constitutional power to the President, courts "expect Congress to speak clearly if it wishes to assign to an agency decisions of vast 'economic and political significance[,]'" *Util. Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014), or at least "lay down by legislative act an intelligible principle to which the person or body authorized to fix such [tariff] rate is directed to conform," *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928).

43. The IEEPA-related EOs does not pass muster under the nondelegation doctrine, much less the stricter major questions doctrine.

44.  The Court should therefore declare the President's IEEPA tariffs unconstitutional and/or unlawful under the major questions doctrine.  The Court should thus enjoin Defendants from enforcing the tariffs as to Plaintiff going forward, and order refund of all IEEPA tariffs paid by Plaintiff on their past entries by the date of judgment, with interest as provided by law.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request judgment from the Court:

(1)   Declaring, pursuant to 28 U.S.C. §§ 2643(a)(1), (c)(1), that the Presidential actions to impose tariffs by the IEEPA-related Executive Orders described above and any future actions imposing tariffs pursuant to IEEPA are unlawful because (1) in doing so, the President has exceeded his authority under IEEPA, or (2) IEEPA unconstitutionally

transfers legislative power to the President;

(2)    Declaring, pursuant to 28 U.S.C. §§ 2643(a)(1), (c)(1), that the challenged IEEPA-related Executive Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

(3)    Enjoining Defendants from imposing and enforcing the IEEPA-related Executive Orders and collecting any such additional tariffs pursuant to IEEPA paid or payable by Plaintiff;

(4)    Ordering Defendants to refund, with interest as provided for by law, any duties paid by Plaintiff pursuant to the IEEPA tariffs described above;

(5)    Awarding Plaintiff its costs and reasonable attorney fees; and

(6)    Granting Plaintiff such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Gregory S. Menegaz

Gregory S. Menegaz
Alexandra H. Salzman
Vivien J. Wang[*]
**The Inter-Global Trade Law Group PLLC**
1156 15th Street N.W.,
Suite 1101
Washington, D.C.  20005
Tel: (202) 868-0300
email:  gmenegaz@igtlaw.com
Counsel to Plaintiff

Dated:  January 12, 2026

---

[*] Admitted to New Mexico Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).

12